**Opinion filed March 8, 2018**



# In The

# Eleventh Court of Appeals

_____

## No. 11-16-00045-CR

_____

## CLARENCE LEON MCDOWELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR23675**

## MEMORANDUM OPINION

The jury convicted Appellant, Clarence Leon McDowell, of possession of marihuana, less than five pounds but more than four ounces, in a drug-free zone. The trial court found the enhancement allegations to be true and assessed punishment at confinement for a term of thirty years. On appeal, Appellant presents four issues for our review. We affirm.

In his first issue, Appellant argues that, because proof of a culpable mental state as to the location of the offense in a drug-free zone was a requisite element of the offense, the trial court erred when it denied his motion to quash and failed to

instruct the jury on a *mens rea* requirement. Second, Appellant asserts that the trial court erred when it denied his motion to suppress the in-car camera footage of his detainment and arrest. Third, Appellant contends that the trial court erred when it allowed the State to ask venirepersons improper commitment questions. Lastly, Appellant challenges the foundation for and admission of maps that had been prepared by the City of Brownwood's engineering projects coordinator.

Officers Brandon Miller and Jeremy Seider were on patrol at around 11:30 p.m. when they noticed Appellant's vehicle parked on the wrong side of the street. Officer Miller testified that "it was very obvious" that, although the right brake light was illuminated, the left brake light did not work. Officer Seider, who was driving the marked patrol unit, pulled over and waited for Appellant to leave. When Appellant pulled out onto the street, the officers followed him.

The officers were "directly" behind Appellant when Officer Seider activated the emergency lights on the patrol vehicle. Although the officers noticed multiple places where Appellant could have pulled over and stopped his vehicle, he continued to drive. Officer Miller informed Officer Seider, who was in training, that the length of time that Appellant took to stop was "very unusual" and that Officer Seider should be "on alert" as he approached the vehicle. At trial, Officer Miller further testified that "oftentimes when subjects refuse to pull over, or don't pull over within a close proximity of lights coming on, it's been my experience that subjects have . . . hidden weapons or narcotics."

When Appellant finally stopped his vehicle, Officer Seider approached the driver's side of Appellant's vehicle, and Officer Miller approached the passenger's side. The officers agreed that Appellant seemed nervous. As Officer Seider talked to Appellant, Officer Miller noticed that Appellant "vigorously shift[ed]" through some papers, which were not relevant to the traffic stop. Officer Seider recalled that Appellant would not maintain eye contact with him.

Officer Seider asked Appellant where he was going; Appellant responded that he was going to Cecil Holman Park. The officers knew that the park area was known for illegal activities. Moreover, it was almost midnight when the officers stopped Appellant.

Officer Seider asked Appellant to get out of the vehicle. He took Appellant to the front of the patrol unit, where the in-car camera was recording.

Appellant continued to act "overly, overly nervous." He still shuffled through the papers and had trouble standing still. At one point, Appellant walked away and Officer Miller had to tell Appellant to go back to the front of the patrol unit. Appellant's hands were shaking, and Officer Seider noticed that his "bottom lip started to tremble" when the officers asked if he was in possession of any illegal narcotics. Appellant denied that he was. After the officers notified dispatch that they had stopped Appellant, dispatch reported that Appellant was "known to be involved in illegal narcotics."

In order to ensure that there were no concealed illegal items in Appellant's vehicle, Officer Miller asked Appellant for consent to search it. Appellant folded his arms and replied that "there were no drugs in his vehicle." Officer Miller testified to the jury that, typically, when he received this type of response, he had in fact found illegal narcotics "or whatever the person [was] trying to not have [officers] locate." Because Appellant did not answer the question, Officer Miller again asked for consent to search the car. Appellant said, "I don't have any problem with that."

Officer Miller opened the door on the driver's side of Appellant's vehicle. Immediately, he noticed a strong odor of fresh marihuana. He saw marihuana residue, seeds, and stems in the driver's side floorboard. Officer Miller again asked Appellant if there was anything in the vehicle that the officers should know about—specifically, marihuana. Appellant again denied that there was marihuana in the car. Next, Officer Miller opened the front passenger's side door of the vehicle. He

noticed a jacket lying in the passenger seat; when he lifted the jacket, he saw a large, Ziploc-style bag that was full of what he believed to be marihuana.

When he found the marihuana, Officer Miller instructed Officer Seider to *Mirandize*[1] Appellant. Officer Seider read Appellant the warnings, and afterwards, Officer Miller asked Appellant whether the marihuana was his. Appellant admitted that the marihuana belonged to him.

The officers continued to search Appellant's vehicle. In the front console area, Officer Miller found a black pipe with burned marihuana residue. Hidden between the backseat and trunk, Officer Seider located another bag of marihuana, similar in size and appearance to the bag found in the passenger seat. In total, the officers seized approximately eight ounces of marihuana from Appellant's vehicle.

Officer Miller and Officer Seider both testified that it was their opinion that the location where Appellant was initially parked and the location where he finally stopped were both "within 1,000 feet" of Brownwood Intermediate School. Officer Seider later returned to the traffic-stop location to confirm his opinion. Detective Joe Aaron Taylor also testified that Appellant was in a drug-free zone while in possession of marihuana.

Appellant first argues that the trial court erred when it denied Appellant's motion to quash the indictment for failure to state a *mens rea* requirement as to the drug-free zone enhancement. Similarly, Appellant argues that the trial court erred when it failed to instruct the jury as to any *mens rea* requirement for the drug-free zone enhancement.

While Appellant's appeal has been pending before this court, the Court of Criminal Appeals decided whether the State must prove that an accused knew that he was in a drug-free zone at the time he committed an offense. *White v.*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

*State*, 509 S.W.3d 307, 315 (Tex. Crim. App. 2017). In *White*, the court held that no such *mens rea* requirement was necessary. *Id.* An accused need not be aware that, when he possessed an illegal drug, he was in a drug-free zone. *Id.* We specifically note that the parties here did not have the benefit of *White* when they briefed this case. We overrule Appellant's first issue.

In Appellant's second issue, he challenges the trial court's denial of his motion to suppress the in-car camera recording of his arrest. Appellant offers three arguments in support of this challenge: first, that there was no probable cause to initiate the traffic stop; second, that even if there was probable cause to pull him over, the officers lacked reasonable suspicion to continue the investigative detention; and third, that the officers failed to obtain voluntary consent to search Appellant's vehicle.

At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). "We give almost total deference to a trial court's ruling on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, while we review de novo application-of-law-to-fact questions that do not turn upon credibility and demeanor." *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Since the trial court did not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *Maxwell*, 73 S.W.3d at 281; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

Appellant argues that the initial traffic stop was illegal because it was without probable cause. However, both federal and state law permit police officers to stop and briefly detain persons suspected of criminal activity on less information than is

5

constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22–26 (1968); *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). "An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *see also Dunn v. State*, 478 S.W.3d 736, 740–41 (Tex. App.—Fort Worth 2015, pet. ref'd) (explaining that the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806 (1996), "tells us only that probable cause is sufficient to support a traffic stop, not that it is necessary" (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000))). Reasonable suspicion arises when an officer has articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Myers v. State*, 203 S.W.3d 873, 882–83 (Tex. App.—Eastland 2006, pet. ref'd).

The Transportation Code requires (1) that the operator of a vehicle who stops or parks on a two-way roadway do so with the right-hand wheels of the vehicle parallel to the right-hand curb of the roadway and (2) that a motor vehicle be equipped with at least two rear stoplamps that emit a red or amber light when the vehicle service brake is applied. TEX. TRANSP. CODE ANN. §§ 545.303, 547.323 (West 2011). "As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person for that violation." *Jaganathan*, 479 S.W.3d at 248 (quoting *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992)).

During the hearing on the motion to suppress, Officers Miller and Seider both testified that they noticed Appellant's car parked on the wrong side of the street and that Appellant's right brake light was illuminated, but his left brake light was not working.

After they saw those two traffic violations, the officers pulled over and waited for Appellant to pull out onto the street before they initiated a stop. Although Officer Miller said that they parked "behind" Appellant's vehicle, Officer Seider recalled that they parked in front of Appellant's vehicle. Appellant argues that this testimony was "inconsistent" and therefore unreliable. However, we defer to the trial court's judgment of the witnesses' credibility and resolution of any conflict in their testimony.

Notwithstanding Officer Miller's and Officer Seider's testimony that Appellant's left brake light was not working, Appellant argues that the video from the in-car camera clearly showed that both of Appellant's brake lights were in fact working. Even if the video supports that the brake lights were working at the time the officers stopped him, the officers' testimony also supports the conclusion that they were not. We will not second-guess the trial court's determination of the facts. *See Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) ("[T]he deferential standard of review in *Guzman* applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing."). Accordingly, we defer to the trial court's role as factfinder. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that there was at least a reasonable suspicion that Appellant committed two traffic violations.

Appellant argues that, even if the initial traffic stop was justified, the officers' investigative detention illegally extended beyond its initial scope. Generally, an investigative stop can last only as long as necessary to effect the initial purpose of the stop. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). However, the investigative stop may continue if an officer develops reasonable suspicion that another offense has been or is being committed. *Hill v. State*, 135 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing *Woods v. State*, 956

7

S.W.2d 33, 35, 38 (Tex. Crim. App. 1997)). The reasonable suspicion determination is made by considering the totality of the circumstances. Officers are entitled to rely on all of the information obtained during the course of their contact with a suspect in developing articulable facts that would justify a continued investigatory detention. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979).

The record reveals that, throughout the traffic stop, the officers continued to develop reasonable suspicion that Appellant was engaged in criminal activity. First, after Officer Seider turned on the emergency lights to initiate the stop, Appellant traveled a "clearly inappropriate" distance before pulling over. When the officers approached Appellant's vehicle, they noticed that he seemed "nervous"—he fidgeted with papers in his hands and did not maintain eye contact with Officer Seider. Appellant also informed the officers that he was traveling to Cecil Holman Park, which was not only unusual given the time of night, but it also was a place known for illegal drug activity. While the officers detained Appellant, dispatch informed them that Appellant was "known" to be involved in narcotics. Finally, when Officer Miller asked for permission to search Appellant's vehicle, Appellant did not answer the question, but instead replied that he "did not have any drugs" in the vehicle. According to Officer Miller, in his experience, this response typically came from people who were indeed hiding contraband in their vehicle. Based on the totality of the circumstances, and in light of the officers' experience and knowledge, Officers Miller and Seider had sufficient reasonable suspicion to continue Appellant's detention beyond the initial traffic stop.

In the final argument of his second issue, Appellant challenges whether officers obtained voluntary consent to search his vehicle. Consent to search is one of the well-established exceptions to the constitutional requirements of both probable cause and a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219

(1973); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). "A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent." *Meekins*, 340 S.W.3d at 458. The voluntariness of an alleged consent to search is a question of fact to be determined from all the circumstances. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). Therefore, we must accept the trial court's finding of voluntariness unless it is clearly erroneous. *Juarez v. State*, 758 S.W.2d 772, 779 (Tex. Crim. App. 1988), *overruled on other grounds by Boyle v. State*, 820 S.W.2d 122 (Tex. Crim. App. 1989). A ruling is "'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Appellant argues that he did not freely and voluntarily give consent to search his vehicle because he gave consent only after Officer Miller repeated the request. However, "repeatedly asking for consent does not result in coercion, particularly when the person refuses to answer or is otherwise evasive in his response." *Meekins*, 340 S.W.3d at 463–64. Officer Miller repeated his request for consent after Appellant evaded the original request with the answer, "I don't have any drugs." This alone does not rise to a level of coercion, and there is no evidence that the officers displayed their weapons or used threats, promises, deception, or a demanding tone. *See id.* Because there is nothing to show that the officers coerced Appellant, the trial court did not abuse its discretion when it found that Appellant voluntarily consented to the search of his vehicle. Appellant's second issue is overruled.

In his third issue, Appellant challenges three variations of the following question, each posed to the venire panel by the State during voir dire, as improper commitment questions:

> Is there anyone who feels like they would require not only beyond a reasonable doubt that the offense occurred in a drug free zone but also that the traffic stop occurred in a drug free zone?[2]

Defense counsel objected to each of these questions and argued that they constituted improper commitment questions. Because a trial court has broad discretion over the process of selecting a jury, an appellate court should not disturb a trial court's ruling made during voir dire absent an abuse of discretion. *Id.*

A question is proper if it is designed to ascertain a juror's views on an issue applicable to the case. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). However, a party may not bind a potential juror to a verdict based on hypothetical facts. *Lydia v. State*, 109 S.W.3d 495, 497 (Tex. Crim. App. 2003). For this reason, improper commitment questions may not be asked. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). "[A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Id.* at 180. A commitment question is improper only when the law does not require such a commitment and when the question includes facts beyond those

_____

[2]Appellant also challenges these questions as improper commitment questions:

Is there anybody who feels like they would absolutely follow the law that the offense had to occur in[,] on, or within a thousand feet, even if the stop doesn't occur in a thousand feet?

. . . .

If you believed beyond a reasonable doubt that the offense occurred within a drug free zone but the stop is outside the drug free zone, does anybody feel like you would require me to prove that the traffic stop occurred within the drug free zone, not just the offense?

. . . .

. . . [I]f I could prove to you that the offense did occur within a thousand feet does it matter to you, are you going to hold me to a standard of that the stop occurred within a thousand feet?

necessary to support a challenge for cause. *Id.* at 181–82. Thus, whether a party asked an improper commitment question is a two-step inquiry: (1) Is the question a commitment question, and if so, (2) does the question lead to a valid challenge for cause and include only the facts necessary to determine whether a panelist is challengeable for cause? *Id.* at 182–83.

The questions at issue were clearly commitment questions, as they sought to elicit a commitment from a potential juror as to whether or not he would convict Appellant if the offense occurred in a drug-free zone.

However, they were not improper commitment questions because they would have led to a challenge for cause and because they did not include any evidentiary facts or non-statutory manners and means. *See Standefer*, 59 S.W.3d at 182; *see also Cardenas v. State*, 325 S.W.3d 179, 189 (Tex. Crim. App. 2010). Appellant was charged with committing the offense of possession of marihuana while in a drug-free zone. TEX. HEALTH & SAFETY CODE ANN. §§ 481.121, 481.134(d)(1) (West 2017). If a venireperson positively answers any of the challenged questions, it would reveal that the he or she would require the State to prove an additional element not required by the statute—that the traffic stop also occurred in a drug-free zone. Requiring proof of this additional element would warrant a valid challenge for cause, and the State's questions contained only the facts necessary to lead to this valid challenge for cause. *Crane v. State*, 786 S.W.2d 338, 345–46 (Tex. Crim. App. 1990). Therefore, each of the challenged questions were proper commitment questions. Appellant's third issue is overruled.

In Appellant's fourth issue, he challenges the trial court's decision to admit, over objection, maps that had been prepared by the City of Brownwood's engineering projects coordinator, Jodie Kelly. These maps illustrated the distance between various locations in Brownwood, including Brownwood Intermediate School, the park, the location where officers first observed Appellant, and the

11

location where officers stopped Appellant. The maps were introduced through Kelly, who was not qualified as an expert and therefore provided only lay testimony that she created maps based on locations that she was given.

Assuming, without deciding, that the trial court erroneously admitted these maps into evidence, any error would be harmless. The erroneous admission of evidence is nonconstitutional error if the trial court's ruling merely offends the rules of evidence. *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We must disregard a nonconstitutional error if it does not affect substantial rights. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014).

"[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon*, 49 S.W.3d at 365). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.*

The maps could not have more than slightly influenced the jury that Appellant committed the offense in a drug-free zone. In addition to viewing these maps, the jury heard testimony from both Officer Miller and Officer Seider that Appellant was within 1,000 feet of Brownwood Intermediate School when they first observed his parked vehicle. Officer Seider testified that he returned to the place where he stopped Appellant to confirm his opinion that it was within 1,000 feet of the school.

12

Officer Miller testified that this location was "pretty close to the same" distance from Brownwood Intermediate School as where the officers first observed Appellant parked. Finally, Detective Taylor confirmed the officers' opinions when he stated that Appellant had parked in a drug-free zone. Appellant's argument that Kelly's testimony was "significantly more detailed and official in appearance" does not reduce this cumulative testimony. Reviewing the record as a whole, there is ample evidence that Appellant was in a drug-free zone when the officers first observed him. Therefore, Appellant's substantial rights were not affected by the trial court's decision to admit the maps. Appellant's fourth issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


March 8, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[3]

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.