William Dewayne WHITE, Appellant

v.

The STATE of Texas

NO. PD-1596-15

Court of Criminal Appeals of Texas.

DELIVERED: February 15, 2017

---

ATTORNEYS FOR APPELLANT: Steven R. Miears, Attorney at Law, 211 North Main, P.O. Box 736, Bonham, TX 75418

ATTORNEYS FOR THE STATE: John B. Setterberg, Assistant District Attorney, 101 E. Sam Rayburn Dr., Ste 301, Bonham, TX, Stacey Soule, State's Attorney, Austin, TX

## OPINION

Yeary , J., delivered the opinion of the Court in which Keller , P.J., and Keasler, Alcala, Richardson, Keel and Walker , JJ., joined.

Appellant was convicted of the offense of delivery of less than a gram of methamphetamine in a drug free zone, a third degree felony. TEX. HEALTH & SAFETY CODE §§ 481.112(a), (b); 481.134(d). His punish-

ment was enhanced with a prior felony to a second degree felony, TEX. PENAL CODE § 12.42(a), and the trial court assessed his sentence at fifteen years' confinement in the penitentiary. On appeal, he urged the Sixth Court of Appeals to hold that the evidence was insufficient to support his conviction because it failed to establish that he knew he was in a drug free zone when he sold the methamphetamine. The court of appeals rejected this contention, holding that the statute does not require proof that a defendant had such an awareness. *White v. State*, 480 S.W.3d 824, 827 (Tex. App.—Texarkana 2015).[1] We granted Appellant's petition for discretionary review in order to examine this construction of the statutes in question, and we now affirm.

■ The indictment alleged that Appellant delivered less than a gram of methamphetamine to a confidential informant "within 1,000 feet of the premises of a youth center, to wit: the Family Life Center." Methamphetamine is a Penalty Group 1 controlled substance. TEX. HEALTH & SAFETY CODE § 481.102(6). The knowing delivery of a Penalty Group 1 controlled substance is an offense. TEX. HEALTH & SAFETY CODE § 481.112(a). This is a nature-of-conduct offense, and the statute expressly assigns culpable mental states to the nature of the conduct: A defendant

must be aware that he is delivering a Penalty Group 1 substance to be guilty. *See, e.g., Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (in order to convict a defendant for possession of a controlled substance with intent to deliver, the State must prove he knew that the substance in his possession was contraband). According to a different subsection of the same statute, if the amount he delivers is less than one gram, then the defendant is guilty of a state jail felony. TEX. HEALTH & SAFETY CODE § 481.112(b).

By virtue of a separately enumerated statute, the delivery of less than one gram of a Penalty Group 1 substance becomes a third degree felony if, among alternative circumstantial elements, "it is shown on the trial of the offense" that it was committed "within 1,000 feet of ... the premises of a public or private youth center[.]" TEX. HEALTH & SAFETY CODE § 481.134(d).[2] This separate statutory provision does not contain any explicit culpable mental state with respect to the added circumstance surrounding conduct that elevates the knowing delivery of less than a gram of a Penalty Group 1 substance from a state jail felony to the level of a third degree felony. Appellant argues that we should nevertheless construe Section 481.134(d) to require an additional culpable mental state. A person cannot "intend" a circum-

1. In a separate point of error, Appellant argued that, if Section 481.134(d) of the Health and Safety Code does *not* require the State to prove an awareness that a defendant is selling contraband in a drug free zone, then it is unconstitutional on its face. The court of appeals held that Appellant procedurally defaulted this claim because he failed to raise it in the trial court. *White*, 480 S.W.3d at 826-27. Appellant did not challenge this holding in his petition for discretionary review.

2. Section 481.134(d) does not make the state jail felony merely *punishable* as a third degree felony. *See Ford v. State*, 334 S.W.3d 230 (Tex.

Crim. App. 2011) (distinguishing provisions in the Penal Code that merely increase the range of punishment from those that actually increase the severity level or grade of the primary offense). Instead, it actually raises the level of the offense to that of a third degree felony. *See* TEX. HEALTH & SAFETY CODE § 481.134(d) ("An offense otherwise punishable under Section 481.112(b) ... *is* a felony of the third degree if it is shown on the trial of the offense that the offense was committed ... in, on, or within 1,000 feet of ... the premises of a public or private youth center[.]") (emphasis supplied).

stance surrounding conduct, of course,[3] so Appellant maintains that we should hold that Section 481.134(d) requires proof that he knew the delivery took place within 1,000 feet of the youth center before he may be convicted of the third degree felony offense.

The court of appeals rejected this contention on the strength of its own precedent and that of several other courts of appeals. *White*, 480 S.W.3d at 827 (citing *Bridges v. State*, 454 S.W.3d 87, 88 (Tex. App.—Amarillo 2014, pet. ref'd), and *Williams v. State*, 127 S.W.3d 442, 445 (Tex. App.—Dallas 2004, pet. ref'd)); *see also Fluellen v. State*, 104 S.W.3d 152, 166 (Tex. App.—Texarkana 2003, no pet.). All of these lower court opinions relied for their primary authority on this Court's opinion in *Uribe v. State*, 573 S.W.2d 819, 821 (Tex. Crim. App. 1978). And, indeed, *Uribe* provides an apt analogy.

In *Uribe*, the defendant was prosecuted for the offense of unlawfully carrying a weapon. At that time, it was unlawful under Section 46.02(a) of the Penal Code for a person to intentionally, knowingly, or recklessly carry on or about his person a handgun, illegal knife, or club.[4] That offense ("UCW") was ordinarily a Class A misdemeanor, but under Subsection (c) of the same statute, the offense was raised to "a felony of the third degree if it occur[red] on any premises licensed or issued a permit by this state for the sale or service of alcoholic beverages." 573 S.W.2d at 821. Uribe argued that the indictment was insufficient to allege the third degree felony because it did not allege that he was aware that the premises upon which he carried the weapon was authorized to sell or serve alcohol. We rejected this argu-

ment, holding that the offense, as defined in Subsection (a), already defined an offense that was complete unto itself, and that boosting the level of that offense to a third degree felony offense under Subsection (c) "does not require a culpable mental state beyond that contained in Subsection (a)." *Id.* We contrasted Section 46.02 with then–Section 46.04 of the Penal Code,[5] a provision that made it an offense to carry a firearm on certain specified premises. Because Section 46.04 made it an offense for a person to carry a firearm *only* if he did so on those specific premises, we observed, it was clear that the entry onto the premises was an element that required a culpable mental state. *Id.* By comparison, because Section 46.02(a), the UCW statute, made it a complete offense to carry certain weapons anywhere, we concluded that there was no apparent intent on the Legislature's part to impose an additional culpable mental state with respect to the circumstance surrounding conduct that made it a felony, as described in Subsection (c). *Id.* at 821-22.

The statutory provisions at issue here operate similarly to the former UCW statute. Section 481.112(a) defines an offense that is complete in itself, including a culpable mental state of knowledge with respect to the nature of conduct proscribed. By assigning that offense as a state jail felony based upon the amount delivered in Subsection (b) of Section 481.112, the Legislature has not created a separate offense requiring additional knowledge of the circumstance that the amount delivered was less than one gram. Likewise, when Section 481.134(d) converts that state jail felony into a third degree felony if committed

3. *See Lugo-Lugo v. State*, 650 S.W.2d 72, 87 (Tex. Crim. App. 1983) (Clinton, J., concurring) ("Nor can a person 'intend' 'circumstances surrounding his conduct[.]' ").

4. Acts 1973, 63rd Leg., ch. 399, § 1, p. 963, eff. Jan. 1, 1974.

5. Also found at Acts 1973, 63rd Leg., ch. 399, § 1, p. 963, eff. Jan. 1, 1974.

within 1,000 feet of a youth center, it has not created a separate offense that necessarily requires an additional culpable mental state with respect to the drug free zone. It has simply re-calibrated the seriousness of the core offense of delivery of a Penalty Group 1 substance according to 1) how much was delivered, and 2) whether it was delivered in a location with the grave potential to compromise the welfare of our young people.

 Whether the statutory provisions should be construed to require a showing of an additional culpable mental state with respect to these circumstantial elements that define the level of the offense is a question of legislative intent. *See Schultz v. State*, 923 S.W.2d 1, 2 (Tex. Crim. App. 1996) (plurality opinion) (in ascertaining whether the child-abandonment statute required only proof that the defendant intentionally abandoned the child, or also required proof that he was aware of the attendant circumstances that rendered leaving the child an "abandonment," "our duty is to effectuate the intent of the Legislature in enacting the statute"). Section

481.134(d) makes no express mention of an additional knowledge requirement with respect to any of the drug free zones it identifies; it does not say a defendant must be aware that (or reckless with respect to whether) his delivery took place there. In the context of an offense that otherwise does prescribe a culpable mental state, the lack of express language requiring an additional *mens rea* with respect to other elements is a "compelling" indication that the Legislature did not intend an additional culpable mental state. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) (plurality opinion) (citing *Aguirre v. State*, 22 S.W.3d 463, 473 (Tex. Crim. App. 1999), for the proposition that "the prescription of a mental state as to certain portions of a statute, but not as to others, is compelling evidence that the Legislature intended to dispense with a mental state as to the latter").

 Even so, Appellant argues, Section 6.02(b) of the Penal Code requires us to read an additional culpable mental state into Section 481.134(d).[6] Section 6.02(b) reads: "If the definition of an offense does

---

6. Appellant's argument is premised upon the assumption that Section 481.134(d) identifies what he calls a "stand-alone" offense, distinct from the offense that is defined in Section 481.112(a) and (b). Appellant's Brief at 23-24. For this proposition, he cites *Harris v. State*, 125 S.W.3d 45, 50 (Tex. App.—Austin 2003, pet. dism'd). There, the court of appeals described the third degree felony offense defined in Section 481.134(d) as being "separate and distinct" from the state jail felony offense defined in Section 481.112(a) and (b). Because Section 481.134(d) creates an offense unto itself, Appellant argues, but contains no culpable mental state of its own, we must supply one in keeping with the mandate of Section 6.02(b) of the Penal Code. We reject the premise that Section 481.134(d) creates an offense unto itself. The offense defined in Section 481.134(d) is but an extension of the offense defined in Section 481.112(a) and (b). In fact, the latter is a wholly subsumed lesser-included offense of the former. *See* Tex. Code

Crim. Proc. art. 37.09(1) ("An offense is a lesser included offense if ... it is established by proof of the same or less than all the facts required to establish commission of the offense charged[.]"). The two offenses are "the same" for double jeopardy purposes. *See Hall v. State*, 225 S.W.3d 524, 533 & n.40 (Tex. Crim. App. 2007) (citing *Brown v. Ohio*, 432 U.S. 161, 167-68, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), for the proposition that greater and lesser-included offenses are the "same" for double jeopardy purposes). In any event, the State would not be able to obtain a conviction for the "separate" third degree felony offense of delivery in a drug free zone without establishing the culpable mental state of knowingly delivering a Penalty Group 1 substance of less than a gram, as required to obtain a conviction under Section 481.112(b). The offense defined in Section 481.134(d) hardly "stands alone" from that defined in Section 481.112(b).

not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." TEX. PENAL CODE § 6.02(b).[7] It is indeed true that, even when a statute expressly assigns a culpable mental state to one element of an offense, we have sometimes discerned a legislative intent to assign a culpable mental state to some other element as well, though the statute may not unambiguously do so. *See, e.g., Delay v. State,* 465 S.W.3d 232, 251 (Tex. Crim. App. 2014) ("[W]hen construing provisions within the Penal Code, we have typically resolved ambiguities with respect to the scope of the applicable *mens rea* in favor of making sure that mental culpability extends to the particular circumstance that renders otherwise innocuous conduct criminal."). Appellant relies upon *McQueen v. State,* 781 S.W.2d 600 (Tex. Crim. App. 1989), for the proposition that we must assign a culpable mental state "to those elements of an offense that separate lawful conduct from criminal conduct." Appellant's Brief at 18. His reliance upon *McQueen,* however, is misplaced.

██ As was the case in *Celis,* the facts of *McQueen* are "distinguishable in two ways" from the facts of the present case. 416 S.W.3d at 427-28. First of all, in *McQueen,* we noted that the language of the unauthorized use of a motor vehicle statute was ambiguous with respect to whether the prescribed culpable mental state modified only the conduct element of "operating" the motor vehicle, or also modified the circumstantial element—the lack of the owner's effective consent. 781 S.W.2d at 603-04 (noting the "confusion" attendant on the fact that "intentionally or knowingly" seemed syntactically to modify

the "operating" element). There is no such ambiguity in the statutory provisions at issue here. The question in this case is not "how far down the sentence the word 'knowingly' is intended to travel[.]" *Liparota v. United States,* 471 U.S. 419, 424 n.7, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (quoting W. LaFave & A. Scott, CRIMINAL LAW § 27 (1972)). The culpable mental state of knowingly delivering a Penalty Group 1 controlled substance, contained in Section 481.112(a), cannot possibly be read to apply to the drug free zone circumstance, contained in Section 481.134(d), that boosts the offense from a state jail felony to a third degree felony. Instead, it is a question of whether we should incorporate a culpable mental state requirement into a distinct statutory provision—Section 481.134(d)—that is patently silent with respect to *mens rea.* In addressing this question, we must be mindful that Section 6.02(b) of the Penal Code requires us to append a culpable mental state to an "offense" that does not otherwise prescribe one—not to an enhancement *statute* that does not otherwise prescribe one.

But this case is also different from *McQueen* in a second, more fundamental respect. We held that it was necessary in *McQueen* to construe the ambiguous culpable mental state also to modify the circumstantial element in the unauthorized use of a motor vehicle statute because, absent the circumstance surrounding conduct as defined by the UCW offense, there would be no culpable mental state assigned to the very element that differentiated lawful from unlawful conduct. *Id.* at 603 ("What makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission."). To intentionally or knowingly oper-

---

7. This provision of the Penal Code is equally applicable to definitions of offenses that appear outside of the Penal Code itself. TEX.

PENAL CODE § 1.03(b); *Aguirre,* 22 S.W.3d at 470.

ate a motor vehicle is a perfectly lawful activity when it is with the owner's effective consent. The same is not true of selling a controlled substance; that conduct is unlawful regardless of whether it occurs in a drug free zone. The knowing delivery of a Penalty Group 1 substance is an actionable offense anywhere it happens in Texas. That the sale takes place within 1,000 feet of a youth center is not a circumstance that is necessary to render otherwise innocuous conduct wrongful. The Legislature may well have intended that one who is already engaged in the unlawful sale of contraband should have to bear the risk that, if he does so at or near certain designated locations, the gravity of his offense will be elevated regardless of whether he was aware of his proximity to that location.[8] The drug free zone circumstance does not separate lawful from unlawful conduct, as Appellant's argument presumes. Rather, it separates already-unlawful conduct from even more egregiously unlawful conduct. There is no particular requirement that the Legislature append a culpable mental state to the elevating circumstance. *See United States v. X-Citement Video*, 513 U.S. 64, 72 n.3, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ("Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful."). "[C]ourts generally have not required proof of an additional culpable mental state when a statute has already prescribed a culpable mental state as to at least one element of the offense." *Celis*, 416 S.W.3d at 428 n.13.

Moreover, when it comes to the protection of children, we have frequently declined to impose a culpable mental state upon a circumstance-surrounding-conduct element of the offense in the absence of an express assignment of such a mental state—even when it was a circumstance that elevated the level of the offense. *See, e.g.*, *Aguirre*, 22 S.W.3d at 475 & n.48 (recognizing cases in which this Court has declined to impose a culpable mental state with respect to "the element of a child's age in statutes that protect children"); *Johnson v. State*, 967 S.W.2d 848, 849-50 (Tex. Crim. App. 1998) ("[T]his Court has previously held that in cases involving sexual assault of a child, such as rape of a child or indecency with a child, the State is not required to show that appellate knew the victim to be younger than 17 years of age."). It is the extremely tender age of the child, for example, that elevates statutory rape in some instances to the level of an aggravated sexual assault. *See* TEX. PENAL CODE § 22.011(a)(2)(B) (making it a first degree felony aggravated sexual assault offense to sexually assault a child "younger than 14 years of age"). With respect to this statute, we observed in *Fleming v. State*, 455 S.W.3d 577, 582 (Tex. Crim. App. 2014):

> Because [it] serves the legitimate state objective of protecting children, we will not read a *mens rea* element into the

---

8. In her concurring opinion in *Celis*, Judge Cochran observed that, in enacting the Texas Penal Code, the Texas Legislature failed to adopt language from the Model Penal Code that would have required a culpable mental state to adhere to "each material element of the offense." 416 S.W.3d at 448. However, [t]he Texas Legislature did not incorporate the language about "each material element" into Section 6.02(b), which requires only one

culpable mental state or *mens rea* for one criminal act. We must assume that this omission was intentional. The Texas Legislature wanted to be able to add additional *mens rea* requirements to specific elements of certain offenses and omit them from others when it wanted to cast the risk—of a bad act, bad result, or the failure to pay attention to attendant circumstances—upon the actor. *Id.* at 449.

statute [with respect to the age of the victim] and do not believe that failure to require *mens rea* as to the victim's age violates the federal or state constitution. The statutory prohibition of an adult having sex with a person who is under the age of consent serves to protect young people from being coerced by the power of an older, more mature person. The fact that the statute does not require the State to prove *mens rea* as to the victim's age places the burden on the adult to ascertain the age of a potential sexual partner and to avoid sexual encounters with those who are determined to be too young to consent to such encounters.

Even the dissenting opinion in *Fleming* acknowledged that "the State has a compelling interest in safeguarding the physical and psychological well-being of children. Protecting children is a widely articulated rationale for imposing strict liability for child sex offenses." *Id.* at 610 (Keller, P.J., dissenting). *See also Black v. State*, 26 S.W.3d 895, 898 (Tex. Crim. App. 2000) (holding that the theory elevating murder to a capital offense based on the victim's status as a child does not require a *mens rea* with respect to that aggravating element, and noting other Penal Code provisions re-

flecting "[t]he legislature's desire to protect child victims independent of the offender's knowledge or intent that his victim is a young child").

Here, it bears repeating, we are not confronted with a strict liability offense. Before he may be susceptible to prosecution for the third degree felony offense of selling less than a gram of a Penalty Group 1 substance *in a drug free zone*, a defendant must first be guilty of the state jail felony offense of selling less than a gram of a Penalty Group 1 substance—*anywhere*. And to be guilty of this offense, he must have "knowingly" delivered a Penalty Group 1 substance. In making it a third degree felony to perpetrate this offense within 1,000 feet of a youth center, Section 481.134(d) does not, on its face, impose any greater culpable mental state. We think that, in leaving out an additional culpable mental state, the Legislature has evinced its intent that an offender who is engaging in the already censurable conduct of selling dangerous substances in this amount should have to bear the risk that he has committed his offense in a location where the substance may fall into the hands, however inadvertently, of children—regardless of whether the offender was aware of that risk.[9]

9. The California Supreme Court has reasoned similarly:

> We recognize that, in some circumstances, severely enhanced penalties may be imposed absent an accused's knowledge of all the facts bringing his conduct within the prohibition of the statute. For example, courts have upheld penalties for the distribution of illegal drugs within 1,000 feet of a school[.] * * * This is permissible because the enhancements do not criminalize otherwise innocent activity, since the statutes incorporate the underlying crimes, which already contain a mens rea requirement. * * * In other words, because it is unlawful to distribute illicit drugs, regardless of the ... location, the accused, by participating

in such an illegal transaction, assumes the risk of the enhanced penalties even absent knowledge of the facts bringing his conduct within the enhancement statutes.

*People v. Coria*, 21 Cal.4th 868, 879-80, 89 Cal.Rptr.2d 650, 658, 985 P.2d 970, 977 (1999). Of likewise similar import are: *United States v. Falu*, 776 F.2d 46, 49-50 (2d Cir. 1985); *United States v. Holland*, 810 F.2d 1215, 1222-24 (D.C. Cir. 1987); *State v. Moore*, 782 P.2d 497, 504-05 (N.J. 1989); *Commonwealth v. Alvarez*, 413 Mass. 224, 228-30, 596 N.E.2d 325, 328-29 (1992); *State v. Coria*, 120 Wash.2d 156, 164-67, 839 P.2d 890, 895-96 (1992); *State v. Brown*, 648 So.2d 872, 876-77 (La. 1995); *Walker v. State*, 668 N.E.2d 243, 244-45 (Ind. 1996); *State v. Benniefield*, 678 N.W.2d 42, 48-49 (Minn. 2004);

We hold that, in order to obtain a conviction for the third degree felony offense of delivering less than a gram of a Penalty Group 1 substance under Section 481.134(d) of the Texas Health and Safety Code, the State need not prove that an accused was aware that the transaction occurred within 1,000 feet of a youth center. The judgment of the court of appeals is affirmed.

Hervey and Newell, JJ., concurred in the result.

*State v. Rutley*, 343 Or. 368, 374-77, 171 P.3d 361, 364-65 (2007); *Saxton v. Commonwealth*, 315 S.W.3d 293, 294-301 (Ken. 2010). *Cf. State v. Denby*, 235 Conn. 477, 480-83, 668 A.2d 682, 684-85 (1995) (statute provided that the State must prove that the defendant intended to sell contraband at a location that "happens to be within 1,000 feet of" a school; but the statute was silent whether the defendant had to *know* that the specific location where he intended to sell the contraband was within 1,000 feet of a school).