

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00293-CR

---

JAMES DORA, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2019-417,316, Honorable John J. "Trey" McClendon III, Presiding

---

December 5, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, James Dora, Jr., was indicted for aggravated robbery with a deadly weapon. In August 2021, a seven-day jury trial was held. The State's evidence showed that in April 2019, Appellant was involved in the marijuana trade with four other persons[1]

---

[1] The other four individuals included Christopher Thomas, Lisa Morales (Thomas's girlfriend), Daytron Hood, and Quaward Williams.

when they hatched a plan to use a gun to rob Tyshaun Bates of drugs, money, and guns.[2] While the robbery was in progress, Bates was shot and killed.

The jury convicted Appellant of aggravated robbery with a deadly weapon, and he was sentenced to 45 years' confinement.[3] He asserts five issues on appeal. After considering each, we affirm.

Issue One—Speedy Trial

In his first issue, Appellant complains he was denied his Sixth Amendment right to a speedy trial. The right protects three interests of a defendant: (1) freedom from oppressive pretrial incarceration, (2) mitigation of the anxiety and concern that accompany public accusation, and (3) avoidance of impairment to the accused's defense. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The right attaches once a person is either arrested or charged. *Id.*

We consider and balance a four-factor test to determine whether a defendant's speedy trial rights were violated:

(1) length of the delay,

(2) reasons for the delay,

(3) defendant's assertion of his speedy trial right, and

(4) prejudice, if any, suffered by the defendant due to the delay.

---

[2] Appellant does not challenge the sufficiency of the State's evidence at trial.

[3] *See* TEX. PENAL CODE ANN. § 20.03 (a), (b) (a first-degree felony).

*Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). In our analysis, we review factual determinations for an abuse of discretion and review de novo questions of law. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021).

Appellant was arrested on June 19, 2019; he was held until trial took place on August 10, 2021.[4] Under the first factor (length of delay), a speedy trial analysis is triggered by the defendant's initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales v. State*, 435 S.W.3d 801, 806 (Tex. Crim. App. 2014) (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). The State concedes the delay is sufficient to trigger the remaining *Barker* factors. Although there is no predefined period of delay whereby delay prejudices a defendant, we will presume for purposes of argument that this length of time is prejudicial.

Second, we next examine the reason for the delay. The State bears the burden of justifying the length of the delay. *Cantu*, 253 S.W.3d at 280. We do not weigh all reasons equally: "an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, weighs less heavily against the State; and a valid reason is not weighed against the State at all." *Lovelace v. State*, 654 S.W.3d 42, 48–49 (Tex. App.—Amarillo 2022, no pet.) (quoting *State v. Conatser*, 645 S.W.3d 925, 929 (Tex. App.—Dallas 2022, no pet.)). The State argued that

---

[4] Appellant, pro se, filed a motion for speedy trial in December 2020 while he was represented by an attorney. His attorney filed a speedy trial motion on July 6, 2021, after his March and June 2021 trial dates passed. In July, Appellant's attorney filed a motion to dismiss for lack of a speedy trial.

approximately one year of the delay was due to plea negotiation and pretrial conferences that occurred before and after Appellant obtained new counsel; Appellant disagrees with this statement. Moreover, no jury trials took place from March 2020 through March 2021 due to the COVID-19 pandemic. At most, this factor weighs slightly against the State. *See id.* Appellant agrees.

For the third factor, we examine when Appellant asserted his right to a speedy trial. Appellant's assertion of his right to a speedy trial should be given "strong evidentiary weight" in our determination of whether he was deprived of that right. *Id.* (citing *Conatser*, 645 S.W.3d at 930). Although Appellant filed a pro se motion for a speedy trial, the trial court was free to disregard it because Appellant was represented by counsel at the time.[5] Accordingly, the record reflects that Appellant's trial took place approximately one month after his proper motion for a speedy trial. Consistent with authority from the Court of Criminal Appeals, we reject Appellant's argument that an announcement of "ready" should be construed as a speedy trial demand; such an announcement "merely asserts that he could go to trial at that moment should the State push for it." *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013). In view of Appellant's delay before requesting a speedy trial, this factor weighs against finding a violation of Appellant's rights.

---

[5] As noted above, Appellant's first effort to submit a speedy trial motion (in December 2020) was presented pro se when he was represented by counsel. In the speedy trial context, however, "[a] defendant has no right to hybrid representation and the trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel." *Holland v. State*, No. 07-22-00162-165-CR, 2023 Tex. App. LEXIS 2880, at *7–8 (Tex. App.—Amarillo May 1, 2023, no pet.) (mem. op., not designated for publication); *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Thus, we will not consider this motion in our analysis.

4

Fourth, we review the prejudice, if any, suffered by the defendant due to the delay. The defendant bears the burden of showing how a delay caused him prejudice. *Cantu*, 253 S.W.3d at 280. Although his brief claims Appellant "suffered physical and mental health decline and the inability to assist counsel as he sat in segregated housing in jail for over two years during a viral pandemic," we find no record evidence before the trial court to support the remarks. At best, they merely track what he alleged in his July 2021 speedy trial motion. Consequently, this factor does not weigh in favor of Appellant's claim. *See Lovelace*, 654 S.W.3d at 50.

Finally, we weigh the *Barker* factors. The record shows that trial took place one month after Appellant's proper request; there is an absence of any proof of prejudice. We conclude the Appellant has failed to carry his burden to establish that he adequately asserted his right and that the delay caused him prejudice and overrule Appellant's first issue.

Issue Two—Alleged Juror Misconduct

In his second issue, Appellant asserts the trial court abused its discretion by failing to hold a hearing on his motion for new trial to determine whether a juror engaged in misconduct. Appellant based his motion on an affidavit from a private investigator containing the hearsay statements of two interviewees—the juror's daughter and an inmate incarcerated at the Tulia Unit of Texas Department of Criminal Justice. The hearsay statements were used by the Appellant to allege that the juror gained information about him through social media and had already formulated opinions about his guilt and sentence prior to the conclusion of his trial.

5

The purpose of a hearing on a motion for new trial is to decide whether the cause should be retried and to prepare a record for presenting issues on appeal in the event the motion is denied. *See Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). The opportunity to prepare a record for appellate review makes a hearing on a motion for new trial a critical stage, but such a hearing is not an absolute right. *Id.* We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion and reverse only when the trial judge's decision lies outside the zone of reasonable disagreement. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009).

A motion for new trial must be supported by an affidavit specifically setting out the factual basis for the claim. *Id.* However, if the affidavit is conclusory, is unsupported by the facts, or fails to provide the requisite notice of the basis for claimed relief, no hearing is required. *Id.* Appellate review is limited to the trial judge's determination of whether the defendant raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *Smith,* 286 S.W.3d at 340. Where, as here, the grounds for a new trial are outside the record, "the movant must support the motion by his or her own affidavit or by the affidavit of someone else specifically showing the truth of the grounds of attack." *Grant v. State*, 172 S.W.3d 98, 101 (Tex. App.—Texarkana 2005, no pet.). And, when a motion for new trial "points out extraneous matters which are necessarily hearsay, "the motion must be supported by a person with knowledge of the facts. *Id.*

The private investigator's statements of what others had told him are hearsay, and therefore not admissible evidence. *See* TEX. R. EVID. 801; *Grant*, 172 S.W.3d at 101; *Martin v. State*, 823 S.W.2d 391, 393 (Tex. App.—Texarkana 1992, pet. ref'd). When the

6

only information supporting an allegation of jury misconduct is hearsay imparted by an investigator, it is unnecessary that the trial court hold a hearing. *See Lomeli v. State*, No. 07-11-00244-CR, 2011 Tex. App. LEXIS 10135, at *6–7 (Tex. App.—Amarillo 2011, no pet.) (per curiam). We find the trial court did not abuse its discretion by not holding a hearing on Appellant's motion due to the hearsay nature of the investigator's affidavit. Appellant's second issue is overruled.

Issue Three—Motion for Mistrial

Via his third issue, Appellant contends the trial court abused its discretion by denying his motion for a mistrial due to juror bias and outside influence. Specifically, he asserts the same juror who allegedly made the statements to her daughter about the status of the trial was threatened by a man who had a violent relationship with the juror's daughter.[6] We overrule Appellant's issue.

A trial court's grant or denial of a motion for mistrial is reviewed for abused discretion. *State v. Gonzalez*, No. 07-20-00170-CR, 2021 Tex. App. LEXIS 4375, at *10 (Tex. App.—Amarillo June 2, 2021, no pet.) (mem. op., not designated for publication). *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A trial court does not abuse its discretion "so long as the result is not reached in an arbitrary or capricious manner." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App.

---

[6] Relevant here, the evidence shows the juror saw a man outside the courthouse during a break. In the past, the man had made threatening comments to the juror; the man also questioned the daughter why her mother was on the jury. After identifying the man, the juror reported to the judge that she was scared for her safety and her daughter's safety because the man knew where she lived. Nevertheless, the juror indicated she could "separate" her feelings about seeing the man and the trial, and agreed to reach a verdict based only on the evidence from the courtroom and the trial court's instructions.

1990)).  Moreover, because a motion for new trial and mistrial are functional equivalents, we may look to standards of review for granting or denying a motion for new trial.  *Id.*

During the hearing outside the jury's presence, the juror indicated she could "separate" her emotions from having seen the man outside the courthouse from her duties as a juror and base her verdict solely on the evidence presented to her by the court.  Her affirmation of her responsibilities as a juror during the hearing was further reinforced by the trial court's jury instructions to "consider only evidence to reach [their] decision" and "not consider, discuss, or mention anything that is not evidence in the trial."  The charge on punishment also stressed that "considering your verdict regarding assessment of punishment, you may take into consideration all of the evidence admitted before you under this charge and of the previous charge, . . . and you must not receive or consider, refer to or discuss any other matter or testimony."

Appellant fails to present any evidence of "juror bias" or juror "intimidation."  Rather, Appellant speculates about how the formerly contentious relationship between the man and the juror's daughter "created an impermissible risk" that Appellant's sentence had been influenced by outside factors.  Juries are "presumed to follow the trial court's instructions in the manner presented."  *Taylor v. State*, No. 07-10-00099-CR, 2011 Tex. App. LEXIS 9943, at *7 (Tex. App.—Amarillo 2011, no pet.) (quoting *Kirk v. State*, 199 S.W.3d 467, 479 (Tex. App.—Fort Worth 2006, pet. ref'd)).  We find no evidence that the juror failed to follow the trial court's instructions or reach a decision on anything other than the trial evidence presented.  Issue three is overruled.

Issue Four—Jury Instruction

Appellant contends the trial court committed error in its jury charge by including an instruction on recklessness in the charge because the law of parties requires specific intent. Appellant contends a proper charge should permit a jury to find him guilty of the law of the parties only if there is evidence that Appellant intended that Bates be shot during an aggravated robbery. We disagree.

According to section 7.02 of the Penal Code, a person is criminally responsible for the acts of another person if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." TEX. PENAL CODE ANN. § 7.02 (a)(2). A robbery is committed when, in the course of committing theft and with the intent to maintain control of the property, the person "intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."[7] TEX. PENAL CODE ANN. § 29.02(a)(1).[8]

Section 29.03(a)(1), (2) of the Penal Code does not specify a required mental state for aggravated robbery. The absence of such a specification suggests that no additional mental state is necessary beyond that required for robbery (i.e., that the offender "intentionally, knowingly, or recklessly," caused bodily injury to the victim). The Court of Criminal Appeals has held that "[i]n the context of an offense that otherwise does

---

[7] A person commits the offense of "theft" if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03.

[8] A person commits aggravated robbery if he commits robbery as defined in section 29.02, and he (1) "causes serious bodily injury to another" or (2) "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. § 29.02 (1), (2).

9

prescribe a culpable mental state, the lack of express language requiring an additional *mens rea* with respect to the other elements is a compelling indication that the Legislature did not intend an additional mental state." *White v. State*, 509 S.W.3d 307, 311 (Tex. Crim. App. 2017). Instead, under rules of statutory construction, "the prescription of a mental state as to one element and not as to others sufficiently demonstrates the Legislature's intent to dispense with a mental state as to those other elements." *Rodriguez v.* State, 538 S.W.3d 623, 628 (Tex. Crim. App. 2018) (quoting *White*, 509 S.W.3d at 311). Here, use of a deadly weapon or resulting serious injury is a part of the same criminal act and bodily injury as the robbery. *Id.* at 629 (quoting *Landrian v. State*, 268 S.W.3d 532, 539 (Tex. Crim. App. 2008)).

Put another way, the commission of the offense of robbery is the gravamen of an aggravated robbery prosecution; the conduct referred to in the aggravated offense is to "separate[] already-unlawful conduct from even more egregiously unlawful conduct." *Id.* (quoting *White*, 509 S.W.3d at 313). In aggravated robbery cases, the State need only prove the defendant had the mental state required in the robbery statute. Because the trial court did not err in its instruction of the jury, we overrule Appellant's fourth issue.

Issue Five—Impeachment Evidence

Finally, Appellant asserts the trial court abused its discretion by sustaining the State's objection to evidence he sought to introduce to impeach the testimony of Shytoshawa Collins. Collins testified Appellant arrived at her house with others implicated in the robbery early on the morning after the shooting and said he "just messed up." Later, she discovered black masks and a backpack containing guns. Collins initially told officers

she didn't know where they were; yet produced the masks days later.  Testimony by the State's DNA expert linked Appellant to one of the masks.  The evidence also revealed that Collins received reward money in return for her cooperation with law enforcement.

During trial, Appellant sought to impeach Collins's credibility by offering evidence of several criminal convictions:

- 2004 conviction for forgery of a financial instrument, tampering with governmental records with intent to defraud, and fraudulent use and possession of identifying information;

- 2007 conviction for theft (community supervision revoked 2014);

- 2014 conviction for aggravated assault with a deadly weapon (community supervision completed);

- 2015 conviction for failure to identify a fugitive with intent to give false information (community supervision completed) and

- 2019 conviction for theft of property.

The trial court permitted Appellant to impeach Collins with the 2007, 2015, and 2019 convictions, but refused to allow evidence of the 2004 and 2014 convictions.  Appellant contends the trial court erred in the exclusions.

Texas Rule of Evidence 609(a) allows the impeachment of a witness by evidence of a prior conviction if the prior conviction was a felony or crime of moral turpitude regardless of punishment so long as the trial court determines the probative value of the evidence outweighs the prejudicial effect.  TEX. R. EVID. 609(a).[9]  The trial court has wide

---

[9] In considering whether the probative value outweighed its prejudicial effect, we review five nonexclusive factors:  (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime to the charged offense and witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue.  *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim, App. 1992).

discretion in ruling on the admissibility of a prior conviction. *Theus*, 845 S.W.2d 874, 880–81 (Tex. Crim. App. 1992). *See King v. State*, No. 07-21-00164-CR, 2023 Tex. App. LEXIS 73, at *7–8 (Tex. App.—Amarillo Jan. 9, 2023, no pet.) (mem. op.).

We review the trial court's decision to admit impeachment evidence under the abuse of discretion standard. *Chitwood v. State*, 350 S.W.3d 746, 748–49 (Tex. App.—Amarillo 2011, no pet.). Appellant must establish that the trial court's refusal to admit the testimony is so clearly wrong that it falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). This is an important standard because even when as many as four of the five factors in the prejudicial vs. probative analysis favor the proponent's position, the unique facts of a case may "compel the conclusion that the lack of impeachment value overrides the other four factors." *Theus*, 845 S.W.2d at 881.

We disagree with Appellant's contention that Collins's forgery/tampering/fraud convictions in 2004 are necessarily relevant to show her propensity to commit perjury in 2021. Because more than seventeen years had elapsed since her earlier conviction and the trial in this case, it was incumbent on Appellant to show that the probative value of the conviction substantially outweighed its prejudicial effect. TEX. R. EVID. 609(b). Appellant failed to meet this burden based simply on the possible weight of Collins's trial testimony coupled with the trial court's admission of a more recent conviction in 2015 for failure to identify a fugitive with intent to give false information.

We likewise overrule Appellant's argument that the trial court erred in refusing to admit evidence of Collins's 2014 conviction for aggravated assault with a deadly weapon

12

for which she completed a period of community supervision. The 2014 conviction was seven years old at trial; Appellant was permitted to impeach Collins with two prior theft convictions and a conviction for identifying a fugitive with intent to give false information. Appellant also impeached Collins on cross examination with her inconsistent statements to law enforcement during the investigation and her receipt of monetary gain in return for cooperation with law enforcement's investigation. Given the other opportunities to impeach Collins, the probative value of being allowed to use the 2014 conviction for aggravated assault to impeach Collins is slight and any likely prejudice to Appellant was minimal.

We cannot say the trial court abused its discretion by denying Appellant an opportunity to put on evidence of the 2004 and 2014 convictions. We overrule Appellant's fifth issue.

## Conclusion

Having overruled all of Appellant's issues on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.