**AFFIRMED and Opinion Filed November 30, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00770-CR**
_____

**MARLON JUAN LALL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-21-0335**

# MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Garcia

Appellant was convicted of manufacture or delivery of four grams or more but less than 200 grams of methamphetamine, a controlled substance. The jury assessed punishment, enhanced, at forty years in prison and judgment was entered accordingly.

Appellant now argues that: (i) the trial court erred in denying his motion to suppress; (ii) the evidence is legally insufficient to establish that he knowingly possessed methamphetamine; and (iii) the trial court erroneously overruled his improper jury argument objection. We affirm the trial court's judgment.

# I.  Background

The events leading to appellant's arrest and conviction occurred on August 12, 2020. Appellant was observed wearing a black fanny pack across his chest, loading things into his vehicle at a house under surveillance for suspected narcotics activity. After appellant left that location, Officer Jordan Pope, accompanied by his canine partner Czar, stopped appellant for having an obscured license plate and following too closely. Appellant consented to a pat-down of his outer clothing and cooperated with Officer Pope but appeared nervous during the encounter.

After Officer Pope checked appellant's identification and registration and confirmed that appellant had no outstanding warrants, he gave appellant a verbal warning for the traffic violations. He then requested consent to search the vehicle, which appellant declined. Officer Pope told appellant he was going to have his canine perform an open-air sniff around the vehicle and if the dog did not alert, appellant would be free to go.

The open-air sniff occurred immediately. Czar alerted to the presence of narcotics in the vehicle, and a search ensued.

The search uncovered a black bag (later confirmed to be the fanny pack the surveillance officer observed) with a sunglass case containing methamphetamine. Other items found in the vehicle included marijuana, drug paraphernalia, a scale, small baggies, and a stolen firearm.

Appellant was charged with the manufacture or delivery of a controlled substance in Penalty Group 1 in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (a), (d). Appellant filed motions to suppress the evidence. The motions were carried with the trial and argued to the court after the State rested. The trial court denied the motions.

The jury found appellant guilty of the charged offense. During the punishment phase, appellant pleaded "true" to an enhancement and the jury assessed punishment at forty years in prison. Judgment was entered on the jury's verdict.

Appellant moved for a new trial and requested findings of fact and conclusions of law on the suppression rulings. The trial court made the findings and conclusions as requested, and appellant initiated this timely appeal.

## II. Analysis

**The Motion to Suppress**

Appellant's first two issues argue the denial of his motion to suppress was erroneous because there was no reasonable suspicion for the traffic stop or the prolonged detention. We disagree.

In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation

–3–

of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011). We also defer to the trial court's findings on questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013).

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667. We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex,* 485 S.W.3d at 436. Whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *tate v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 699 (1996)).

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In that context, we review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision, regardless of whether the trial court granted or denied the motion. *Wade*, 422 S.W.3d at 666 (citing *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)). We will sustain

the trial court's ruling if it is supported by the record and if it is correct under any applicable legal theory. *Lerma*, 543 S.W.3d at 190.

**The Traffic Stop**

We begin with appellant's challenge to the initial detention. The trial court found the evidence supported Officer Pope's reasonable suspicion that appellant committed traffic violations by failing to maintain and assume clear distance and for an obstructed license plate, and that reasonable suspicion justified the stop. Appellant maintains there was no justification for the stop and the trial court's determination was in error.

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Warrantless traffic stops by law enforcement personnel to address traffic violations constitute seizures within the meaning of the Fourth Amendment and are tantamount to temporary detentions; therefore, such traffic stops must be justified and supported by reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also Derichsweiler*, 348 S.W.3d at 914. This

principle controls "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

An actual traffic violation constitutes an objectively reasonable basis for the stop and sufficiently justifies the initial detention. *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000). But the State is not required to show that a traffic offense was actually committed. *Tex. Dep't. of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.). Rather, the State need only show that the officer reasonably believed a violation was in progress. *Id.*; *Tex. Dep't. of Pub. Safety v. Marron*, No. 14-21-00475-CV, 2022 WL 3452902, at *3 (Tex. App.—Houston [14th Dist.] Aug. 18, 2022, no pet.) (mem. op.); *see also Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) (question is not whether the defendant is guilty of a traffic offense but whether officer had a reasonable suspicion that he was). Even when an officer is mistaken about the facts that cause him to believe a defendant was in violation of a statute, the mistake "will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be." *Robinson v. State*, 377 S.W.3d 712, 720, 721 (Tex. Crim. App. 2012).

When determining whether reasonable suspicion supports a traffic stop, we do not consider the officer's subjective intent in stopping a suspect; instead, we look "solely to whether an objective basis for the stop exists under the totality of the circumstances." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see*

*also Wade*, 422 S.W.3d at 668. An officer has reasonable suspicion to detain a person when, under the totality of the circumstances, he has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude that the detained person is, was, or will soon be engaged in criminal activity. *See Ramirez-Tamayo*, 537 S.W.3d at 36. This objective standard requires only some minimal justification for the stop. *Brodnex*, 484 S.W.3d at 437. Nonetheless, the officer must have more than just an inarticulable hunch or mere good faith suspicion that a crime was in progress. *Id.*

In assessing reasonable suspicion, we "cannot reasonably demand scientific certainty . . . where none exists," and must permit officers to make "commonsense judgments and inferences about human behavior." *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

Once an officer has a reasonable, articulable suspicion for a traffic stop, the stop does not offend the Fourth Amendment, even if the police made the stop for the purpose of an investigation unrelated to the given reason. *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Crittendon v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995) (that law enforcement had ulterior motive for the stop is of no consequence).

With these principles in mind, we turn to whether Officer Pope had reasonable suspicion that appellant had committed traffic violations. Appellant was stopped for following too closely, TEX. TRANSP. CODE ANN. § 545.062(a) and having an

obscured license plate, TEX. TRANSP. CODE ANN. § 504.945.[1] *See Martinez v. State*, 500 S.W.3d 456, 467 (Tex. App.—Beaumont 2016, pet. ref'd) (obscured plate); *Yoda v. State*, 630 S.W.3d 470, 478 (Tex. App.—Eastland 2021, pet. ref'd) (following too closely). Officer Pope testified that he observed these violations, and the trial court so found.

Specifically, Officer Pope said he believed appellant was following too closely because the vehicles were traveling at around 60 miles per hour and appellant's vehicle was not a safe distance from the vehicle in front of him. He explained that road and traffic conditions factored into his determination. Road conditions can include whether the road is "wet, dry, straight, curved, hill, hill grade, level." Traffic conditions include "oncoming traffic, traffic behind . . . [and] traffic turning from other roadways." The evidence establishes that the road on which appellant was traveling had both curves and hills, and Officer Pope testified that if someone is going up a hill and following too closely they would not have time to stop to avoid a collision. Officer Pope has over six years' experience as an officer, and the trial court could reasonably conclude that such experience informed the

---

[1] Section 545.062 provides: "a[n] operator shall, if following another vehicle, maintain an assured clear distance between the two motor vehicles so that, considering the speed of the vehicle, traffic, and condition of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway." TEX. TRANSP. CODE ANN. § 545.062(a).

Section 504.945 provides, in pertinent part: "[a] person commits an offense if the person attaches to or displays on a motor vehicle a license plate that . . . has blurring or reflective matters that significantly impairs the readability of the name of the state in which the vehicle is registered or the letters or numbers of that license plate at any time." TEX. TRANSP. CODE ANN. § 504.945(a)(5).

officer's investigation. *See Glover*, 140 S. Ct. at 1190 (recognizing that specialized training and experience of law enforcement officers plays a significant role in criminal investigations).

Appellant argues that the dashcam video demonstrates that the license plate was readable once the vehicle was stopped. But we do not assess reasonable suspicion based on hindsight or what Officer Pope "should have known" once the vehicle was stopped. *See Duran*, 396 S.W.3d at 572. The issue is not whether a violation occurred, but rather, whether Officer Pope objectively perceived a violation. *See Robinson*, 377 S.W.3d at 720. To this end, Officer Pope testified that he could not read appellant's paper tag because there was a piece of tape over the letter "T."[2] The trial court's findings imply that the judge found this testimony credible, and we afford the utmost deference to the court's credibility determinations. *See Derichsweiler*, 348 S.W.3d at 913.

Nonetheless, appellant insists that video from Officer Pope's dashcam and body camera are "indisputable evidence that [Pope's] subjective belief was objectively unreasonable." Videotape evidence is rarely indisputable. *State v. Tabares*, No. 08-17-00175-CR, 2019 WL 2315004, at *6 (Tex. App.—El Paso May 22, 2019, no pet.) (mem. op., not designated for publication). Although we may

---

[2] Appellant also argues that the plate was not unreadable because Detective Figueroa informed Officer Pope that appellant was driving a Mercedes SUV with a temporary tag "77135T2." But Detective Figueroa also testified that she "was calling the tag over the radio but could not read it all the way because of the obstruction." We defer to the trial court's assessment of this witness's credibility and the weight to be afforded her testimony. *Derichsweiler*, 348 S.W.3d at 913.

review "indisputable visual evidence contained in a videotape" de novo, we must defer to "the trial court's factual findings on whether what a witness actually saw was depicted on a videotape . . . ." *Duran*, 396 S.W.3d at 570–571. "Indisputable visual evidence" is "conclusive evidence that does not pivot on an evaluation of credibility and demeanor." *Walker v. State*, No. 12-15-00128-CR, 2016 WL 3950950, at *2 (Tex. App.—Tyler July 20, 2016, no pet.) (mem. op. not designated for publication). The video evidence here does not meet that definition. *See Allison v. State*, No. 01-19-00909-CR, 2021 WL 3775600, at *5 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (mem. op., not designated for publication) (video did not indisputably show defendant maintained his lane and did not cross center stripe); *Walker*, 2016 WL 3950950, at *2 (video did not conclusively contradict officer's testimony). Officer Pope testified about his observations precipitating the basis for the stop. The trial court impliedly found that this testimony was credible. *See Lerma*, 543 S.W.3d at 190 (we imply all fact findings not explicitly made in support of the trial court's ruling).

We agree that whether a motorist is following too closely is a subjective determination. *See Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). When the assessment of a traffic violation is subjective, an officer's conclusory statement that a violation occurred will not support reasonable suspicion. *Ford*, 158 S.W.3d at 493. In such a case, the State must elicit testimony establishing facts that would allow the officer to objectively determine that there was a traffic violation.

*See Yoda*, 630 S.W.3d at 478–479 (citing *Ford*, 158 S.W.3d at 494); *Phipps v. State*, No. 09-18-00473-CR, 2021 WL 262074, at *4 (Tex. App.—Beaumont Jan. 27, 2021 no pet.) (mem. op., not designated for publication) (distinguishing *Ford*). As previously discussed, Officer Pope supplied that testimony here, specifically describing speed, traffic, and road conditions, as well his observations. That testimony removed his testimony from the "realm of a pure conclusory statement." *See Young v. State*, 420 S.W.3d 139, 144 (Tex. App.—Texarkana 2012, no pet.).

Given the record before us, we conclude the State developed evidence that Officer Pope had specific, articulable facts upon which he could reasonably conclude that appellant committed a traffic violation. *See Nadeau v. State*, No. 05-19-01137-CR, 2022 WL 3053917, at *3 (Tex. App.—Dallas Aug. 3, 2022, no pet.) (mem. op., not designated for publication). Accordingly, the trial court did not err in concluding that there was reasonable suspicion for the stop.

**The Canine Sniff**

Appellant also argues that the prolonged detention violated the Fourth Amendment because the purpose of the traffic stop had concluded when Officer Pope conducted the canine sniff. The State maintains that the initial investigation had not concluded.

"The touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Thus, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution

–11–

unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (quoting *United States v. Place*, 462 U.S. 696, 722 (1983) (Blackmun, J., concurring)). Specifically, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

Appellant argues that the trial court's determination runs afoul of the holding in *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015). This argument, however, seeks to extend *Rodriguez* beyond its narrow holding.

In *Rodriguez*, an officer lawfully stopped a vehicle with two occupants for driving on the shoulder. *Id*. at 351. The officer ran a records check on the driver, issued a warning ticket, and returned the driver's documents. Put simply, the officer had "[taken] care of all business" related to the traffic violation yet did not consider the defendant "free to leave." *Id.* at 352. Instead, the officer held the defendant for an additional seven or eight minutes until a canine unit arrived, and a search ultimately uncovered methamphetamine in the vehicle. *Id.* The Supreme Court granted certiorari to resolve "whether police routinely may extend an otherwise-completed traffic stop, *absent reasonable suspicion*, in order to conduct a dog sniff." *Id*. at 353 (emphasis added).

The *Rodriguez* court began by examining the "mission" of a traffic stop:

Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop. [Citation.] Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. [Citations.] These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. [Citations.]

*Id.* at 355. The Court then concluded that a dog sniff was not one of these ordinary inquiries: "Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.* at 356. Authority for the traffic stop ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*. at 354. Therefore, the Court held that, absent reasonable suspicion of criminal activity, the police could not prolong a traffic stop to conduct a dog sniff. In so concluding, it rejected the government's argument that an officer "may 'incremental[ly]' prolong a stop to conduct a dog sniff so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable." *Id.* at 357. The Court vacated the order denying the motion to suppress and remanded to the Eighth Circuit to determine "whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic investigation." *Id*. at 358.

Here, the parties disagree about when the mission of the traffic stop concluded. The canine sniff occurred immediately after appellant refused consent to search. Prior to the sniff, Officer Pope had issued a verbal warning about the traffic

violation but did not tell appellant he was free to go. As *Rodriguez* instructs, however, "the critical question . . . is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs' . . . 'the stop.'" *Rodriguez*, 575 U.S. at 357. There is no question that the canine sniff prolonged the stop at issue here, albeit for less than approximately two minutes. Under these circumstances, we assume the traffic investigation had been completed and consider whether Officer Pope had reasonable suspicion to prolong the detention for the canine sniff.

The trial court found that appellant was extremely nervous, unable to locate his wallet and refused consent to search. The trial court also found that Officer Pope had been advised that appellant had just been present at a residence where illegal narcotics activity was suspected. The evidence supports these findings.

On the day in question, Sergeant Lutes, an officer in the Rockwall Police Department, was conducting surveillance and spot checks on various houses suspected of supplying narcotics. That afternoon, Sergeant Lutes was surveilling a house located on FM 550. He saw a gold Mercedes pull into the driveway. The driver, later identified as appellant, got in and out of the vehicle several times and put several things in the back of the vehicle. Appellant was wearing a black fanny pack across his chest.

When appellant left the residence, he "pulled almost entirely out in the road and then backed up into the driveway." Sergeant Lutes described this activity as a "heat run," used to detect movement in surrounding houses or surveillance.

Sergeant Lutes called for assistance. Detectives Figueroa and Ingallo responded, as well as Officer Pope and Czar. Detective Figueroa, who was traveling in an unmarked vehicle, located appellant's vehicle traveling south on FM 550, a road with curves and hills. She said that she observed appellant crossing the double yellow line several times and following the vehicle in front of him too closely.[3] She described appellant's license plate as a paper tag that she "couldn't read very well." She called the tag over the radio but "couldn't read it all the way because of the obstruction."

Officer Pope and Czar were travelling in a marked vehicle. When he spotted appellant in his Mercedes SUV, Detectives Figueroa and Lutes were following appellant in separate cars. Officer Pope activated his lights and stopped appellant for following too closely and having an obstructed plate.

Appellant was alone in the vehicle and smoking a cigarette when Officer Pope made contact. When Officer Pope requested appellant's driver's license, appellant asked if he could look for it. Appellant "kind of patted his clothes, patted areas of the vehicle, and that was the extent of it." Appellant was "kind of aimlessly touching

---

[3] On cross-examination, Detective Figueroa conceded that the road did not have a double yellow line.

–15–

areas." After exiting the vehicle, appellant also looked in the back of the vehicle, but Officer Pope said, "it appeared that he didn't look for anything, he was just standing back there."[4]

Appellant appeared nervous during the encounter. His breathing was labored and he impulsively lighted a cigarette. As he stood on the roadside, "his carotid artery was pounding." Officer Pope said his observations of appellant's actions and his nervousness led him to believe there was "something in the vehicle."

Appellant consented to a pat-down search. Although appellant could not locate his driver's license, he provided his driver's license number. Officer Pope checked appellant's identification and registration and confirmed that appellant had no outstanding warrants. He then issued a verbal warning for the traffic violations and requested consent to search the vehicle. Appellant declined. Officer Pope told appellant that he was "going to run [his] canine around the vehicle," and if the dog did not alert, appellant was free to go. Czar alerted to the presence of narcotics on the passenger side door area.

The foregoing supports Officer Pope's reasonable suspicion to prolong the detention. But appellant urges that nervousness is not enough. *See Wade*, 422 S.W.3d at 671 (nervousness not "particularly probative because most citizens with

---

[4] Appellant did not locate his driver's license. After the search, his wallet containing the license was located next to the black bag containing methamphetamine. But we do not consider knowledge gained by law enforcement after the fact. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").

nothing to hide will nonetheless manifest an understandable nervousness in the presence of [an] officer."). Likewise, he asserts that Pope's knowledge of a narcotics investigation and that appellant had just left a house under investigation is "patently conclusory," because the record does not reflect "when, if ever, officers received any information about alleged drug activity at the residence, including any documented history of drug sales or appellant's past connection with or visits to this residence." He further argues that refusal of consent to search does not support reasonable suspicion. *See Siefert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.). Finally, he argues that appellant's inability to locate his wallet is of no consequence because he provided his driver's license number.

But we do not view these facts in isolation. *See Arvizu*, 524 U.S. at 273 (discussing totality of the circumstances). Indeed, the United States Supreme Court has cautioned that courts should not engage in a "divide–and–conquer" analysis. *Id* at 267. Although factors supporting reasonable suspicion may be discussed separately, "courts must still consider the reasonable inferences that a law enforcement officer could draw from the objective facts in combination." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018); *see also Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016) (courts consider the cumulative force of all the circumstances). This is because "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Wesby*, 138 S.Ct. at 588.

Moreover, the facts appellant challenges are frequently considered in the reasonable suspicion calculus. For example, while presence in an area of high criminal activity will not support reasonable suspicion standing alone, officers are not required to ignore the relevant characteristics of a location. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also Lewis v. State*, No. 01-15-00778-CR, 2016 WL 5400498, at *7 (Tex. App.—Austin Sept. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (location coupled with other circumstances may support reasonable suspicion); *Robinson v. State*, No. 06-01-00208-CR, 2002 WL 1969075, at *3 (Tex. App.—Texarkana Aug. 27, 2002, pet. ref'd) (mem. op., not designated for publication) (traveling from a city known to be a source for narcotics factored in reasonable suspicion analysis).[5]

Similarly, nervous behavior, coupled with other factors such as presence at a drug house, is frequently considered. *See Medellin v. State*, Nos. 02-10-00002-CR, 02-10-00003-CR, 2011 WL 2119668, at *5 (Tex. App.—Fort Worth May 26, 2011, no pet.) (mem. op., not designated for publication) (reasonable suspicion to prolong detention for ten minutes to conduct canine sniff based on driver leaving a known drug house, allowing search of person but not vehicle, and lack of license and proof

---

[5] Further, appellant offers no authority for the proposition that we must disregard police testimony about surveillance and a suspected narcotics location for lack of specific details about the investigation itself. Reasonable suspicion is a less exacting standard than probable cause. *See Glover*, 140 S. Ct. at 1187 (noting that reasonable suspicion falls short of 51% accuracy); *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016) (reasonable suspicion is a less demanding standard than probable cause and requires a showing "considerably less than preponderance of the evidence.").

of insurance); *Lindsey v. State*, No. 01-15-00649-CR, 2016 WL 5851898, at \*3 (Tex. App.—Houston [1st Dist.] Oct. 6, 2016, pet. ref'd) (mem. op., not designated for publication) (reasonable suspicion based on passenger's presence in a car in front of known "crack house," his apparent nervousness, and his lack of identification). And while appellant correctly observes that refusal of consent to search cannot form the sole basis for reasonable suspicion, it can be a factor in the analysis. *See Wade*, 422 S.W.3d at 674 (Supreme Court has never said that refusal to cooperate with a consensual search or encounter is irrelevant). Here, appellant's consent to a search of his person but not the vehicle factors in the reasonable suspicion analysis. *See Medellin*, 2011 WL 2119668, at \*5.

We agree that any one of the facts upon which Officer Pope relied might be innocent when considered in isolation. The important question, however, is not whether particular conduct is innocent or criminal; rather, it is the degree of suspicion that attaches to the particular non-criminal acts. *Derichsweiler*, 348 S.W.3d at 914.

It is well-established that there is no constitutional stopwatch measuring the permissible length of a detention. *See, e.g., Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet ref'd) (seventy-five-minute detention from time of stop until drug dog arrived not unreasonable); *Parker v. State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd) (officers acted diligently even though it took drug dog forty minutes to arrive). In this instance, the stop lasted approximately ten

minutes before the canine sniff commenced. Appellant's continued detention for the canine sniff occurred immediately and took approximately two additional minutes until Czar alerted.[6] Nothing in the record suggests that Officer Pope did not diligently pursue the investigation. *See U.S. v. Sharpe*, 470 U.S. 675, 686 (1985) (in determining the reasonable duration of the stop it is appropriate to examine whether the police diligently pursued the investigation).

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the record supports Officer Pope's reasonable suspicion that appellant was engaged in criminal activity, and therefore appellant's brief continued detention was not unreasonable under the Fourth Amendment. *See Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012). Under these circumstances, the trial court did not err in denying the motion to suppress. Appellant's first two issues are resolved against him.

**Sufficiency of the Evidence**

Appellant's third issue argues the evidence is insufficient to establish that he knowingly possessed methamphetamine. We review a challenge to the sufficiency of the evidence of a criminal offense under the *Jackson v. Virginia* standard. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*,

---

[6] Once Czar alerted, Officer Pope's reasonable suspicion ripened into probable cause. *State v. Weaver*, 349 S.W.3d 521, 527–28 (Tex. Crim. App. 2011); *Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006).

443 U.S. 307 (1979)). We examine all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Id.* We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The fact finder can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

Appellant was convicted under the Health & Safety Code § 481.112(d), which provides in pertinent part that an offense under subsection (a) is a first-degree felony if the amount of the controlled substance is four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). Subsection (a) provides that "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Methamphetamine is a Penalty

–21–

Group 1 controlled substance. *See White v. State*, 509 S.W.3d 307, 309 (Tex. Crim. App. 2017).

In a possession of a controlled substance prosecution, "the State must prove that: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule. *Id*. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. *Id.* However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. *Id*.

In applying the affirmative links test, it is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Id.* Links that may circumstantially establish the sufficiency of the evidence to prove that a defendant had knowing "possession" of contraband include the following: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when

arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id*. at 161 n.12; *Dominy-Gatz v. State*, No. 05-15-01194-CR, 2016 WL 7321435, at *15 (Tex. App.—Dallas Dec. 16, 2016, pet. ref'd) (mem. op., not designated for publication).

The evidence before the jury included several affirmative links connecting appellant to the methamphetamine. Appellant was present where the drugs were found and was the driver and sole occupant of the vehicle. The black bag containing the drugs was found on the passenger side floorboard next to appellant's wallet. The black bag and the sunglass case inside the bag were both enclosed, and both items were in the vehicle, also an enclosed space. Other drugs and paraphernalia were also found, including a syringe, a marijuana pipe, a bag of marijuana, and straws. Czar alerted to the odor of drugs. *See Henry v. State*, 409 S.W.3d 37, 43 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (dog alert to narcotics odor was a factor linking defendant to narcotics). The State's forensic scientist testified that the weight of the methamphetamine was 15.52 grams. This is a large enough quantity to indicate that

appellant was aware of its presence. *See Porter v. State*, 873 S.W.2d 729, 733 (Tex. App.—Dallas 1994, pet. ref'd). And the search uncovered a firearm behind the driver's seat, along with magazines of ammunition.

We conclude that appellant's connection to the methamphetamine was more than fortuitous and that the logical force of the links established by the evidence would allow a reasonable jury to conclude that appellant possessed the methamphetamine. *See Kennedy v. State*, No. 05-19-01307-CR, 2021 WL 2451165, at *4 (Tex. App.—Dallas June 16, 2021, pet. ref'd) (mem. op., not designated for publication).

Intent to deliver may be proved by circumstantial evidence, such as the quantity of the drugs possessed, the manner of packaging, whether the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Testimony at trial established that the amount of methamphetamine appellant possessed was not a personal use amount. Officer Pope testified that the small baggies and scales that were found are consistent with the sale of narcotics. A rational jury could have inferred that appellant intended to sell the methamphetamine in his possession. *See id.*

Viewing all the evidence in the light most favorable to the verdict, a rational factfinder could have found the elements of the charged offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. Appellant's third issue is resolved against him.

**Improper Jury Argument**

Appellant's fourth and fifth issues argue the trial court erred by overruling his improper jury argument objection. The State responds that appellant's issues do not comport with his trial objections, the issue is not preserved because appellant did not request a mistrial, and even if the issues were preserved for our review, any error is harmless.

"Appropriate jury argument generally falls within only four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement." *Ex parte Scott*, 541 S.W.3d 104, 119 (Tex. Crim. App. 2017). Even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). We must "review the argument in the context of the entire argument and not in isolation." *Sennett v. State*, 406 S.W.3d 661, 670 (Tex. App.—Eastland 2013, no pet.).

During closing argument in the present case, the State argued:

Why didn't he give consent? You can hold that against the defendant. Why didn't he give consent to search the vehicle? A reasonable

deduction from the evidence, folks, is because he knew he had those drugs in the car.

Defense counsel objected that this was "outside the record," and the objection was overruled. The State further argued:

> Because if he knew there was nothing in the vehicle, when Detective Pope says, hey, do you mind if I search your vehicle? Yep, go ahead, take a look, nothing in there. But he didn't consent because he knew he had methamphetamine.

Defense counsel objected, "That's outside the evidence, judge." The objection was overruled.

Appellant now argues the argument was improper because evidence of a defendant's refusal to consent to search is inadmissible and the reason he refused consent was not in evidence. We agree that the trial objection "outside the record" did not fully advise the trial court that his refusal to consent was inadmissible or an impermissible comment concerning his exercise of constitutional rights. *See Dixon v. State,* 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (trial objection that does not comport with appellate issue preserves nothing for review); *see also Turner v. State,* 87 S.W.3d 111, 117 (Tex. Crim. App. 2002) ("outside the record" objection did not comport with argument on appeal).

Nonetheless, even if the appellate issues comport with the trial objections, and assuming without deciding that the argument falls outside the scope of permissible argument, the record does not reflect that appellant suffered harm. Improper-argument error of this type is non-constitutional in nature, and a non-

constitutional error "that does not affect substantial rights must be disregarded." *See, e.g., Freeman v. State,* 340 S.W.3d 717, 728 (Tex. Crim. App. 2011) (citing TEX. R. APP. P. 44.2(b); *Martinez v. State,* 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000)). To determine whether appellant's substantial rights were affected, we consider the severity of the misconduct (i.e., the prejudicial effect), any curative measures, and the certainty of conviction absent the misconduct. *Martinez*, 17 S.W.3d at 692–93.

The prosecutor's comments did not occupy a significant portion of the State's closing argument at the guilt phase and the State did not emphasize the comments. Viewing the State's closing argument as a whole, we cannot conclude that there was a willful and calculated effort to deprive appellant of a fair and impartial trial. Further, viewing the record as a whole, we cannot conclude that appellant was prejudiced by the prosecutor's comments.

Moreover, as appellant acknowledges, his counsel did not object when testimony concerning his refusal of consent to search was elicited at trial. That is, the fact that he refused consent was not new or "outside the record." Further, appellant did not request, nor did the court give, a curative instruction. An instruction to disregard will generally cure error if a prosecutor mentions facts outside the record. *See Freeman,* 340 S.W.3d at 728.

Regarding the certainty of conviction absent the comments, the record contains ample evidence supporting the jury's determination that appellant was guilty of the charged offense beyond a reasonable doubt. And the comments

–27–

concerning refusal of consent to search did not pertain to the probative force of the affirmative links establishing appellant's possession of methamphetamine.

Viewing the comments in the context of the State's closing argument as a whole, and given the lack of prejudice, and the strength of the evidence supporting appellant's conviction, we conclude that any errors associated with the complained-of comments were harmless. Appellant's fourth and fifth issues are resolved against him.

## III.   Conclusion

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Pedersen, J. dissenting

Do Not Publish
TEX. R. APP. P. 47.2(b)
210770F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MARLON JUAN LALL, Appellant

No. 05-21-00770-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-21-0335.
Opinion delivered by Justice Garcia. Justices Myers and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 30, 2022